IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.   Criminal No. 3:09cr130

PATRICK LEE RANKING,

Petitioner.

## REPORT AND RECOMMENDATION

This matter comes before the Court for an evidentiary hearing and a Report and Recommendation as to the Motion to Vacate, Set Aside, or Correct a Sentence filed pursuant to 28 U.S.C. § 2255 ("§ 2255 motion") by Patrick Lee Ranking, a federal prisoner. On December 6, 2012 the Court held an evidentiary hearing. After significant delays at several stages of briefing, the parties submitted post-hearing proposed findings of fact and conclusions of law (ECF Nos. 67, 71), and the matter is ripe for disposition. For the following reasons, the Court RECOMMENDS that Ranking's claim of ineffective assistance of counsel based on his attorney's failure to file an appeal as instructed be DISMISSED, and the § 2255 motion be DENIED.

### I. Factual and Procedural Background

On March 19, 2009, the United States filed a criminal complaint, alleging Ranking conspired to distribute and possessed with intent to distribute a mixture or substance containing one kilogram or more of heroin, in violation of 21 U.S.C. §§ 846 and 841(a). (ECF No. 1.) On March 19, 2009, Ranking made his initial appearance. (ECF No. 2.) The Court ordered Ranking temporarily detained pending a detention hearing. (ECF No. 4.) On March 20, 2009, the Court appointed Todd Byron Stone as counsel for Ranking. (ECF No. 5.) On April 14, 2009, the

federal grand jury indicted Ranking in a two-count criminal indictment. (ECF No. 8.) Count One charged Ranking with conspiracy to distribute and possess with intent to distribute one kilogram or more of a mixture and substance containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1). Count Two charged Ranking with possession with intent to distribute a mixture and substance containing a detectable amount of heroin, in violation of 21 U.S.C. § 841(a). On April 27, 2009, the district court arraigned Ranking. (ECF No. 10.) Ranking pled not guilty and the district court set his jury trial for July 6, 2009. (ECF No. 10.)

On July 1, 2009, Ranking pled guilty to Count One of the Indictment with a written plea agreement and statement of facts. (Guilty Plea Hr'g Tr. (Guilty Plea Hr'g Tr.") 19:13-16, July 1, 2009, ECF No. 60.) The district court set Ranking's sentencing for September 24, 2009. (Guilty Plea Hr'g Tr. 21:4-7.) On September 24, 2009, Ranking orally moved for a continuance of his sentencing hearing in order to give him the opportunity to speak with law enforcement in the hopes that he would qualify for the so-called safety-valve provision of the United States Sentencing Guidelines. (Sentencing Hr'g Tr. ("Sept. Sent. Hr'g Tr.") 3:11-18, Sept. 24, 2009, ECF No. 18; U.S. Sentencing Guidelines Manual § 5C1.2 (2008).) The district court granted Ranking's motion to continue sentencing, continuing Ranking's sentencing to October 13, 2009. (Sept. Sent. Hr'g Tr. 4:10-22.)

On October 13, 2009, the Honorable Henry E. Hudson sentenced Ranking to 120 months of imprisonment, entering judgment on October 14, 2009. (Sentencing Hr'g Tr. ("Oct. Sent. Hr'g Tr.") 33:2-6, Oct. 13, 2009, ECF No. 24.) This sentence represented the statutory mandatory minimum. (Oct. Sent. Hr'g Tr. 31:10-14.) Ranking did not file an appeal.

On September 24, 2010, the Court received Ranking's § 2255 motion. (ECF No. 29.) By Memorandum Order entered April 25, 2012, the district court referred Ranking's ineffective

assistance of counsel claim to the undersigned Magistrate Judge for an evidentiary hearing. (ECF No. 42.) Ranking failed to comply with the district court's April 25, 2012 order, and on June 27, 2012, this Court recommended that the district court dismiss with prejudice Ranking's claim and deny his § 2255 motion. (ECF No. 49.) The Court specifically informed Ranking that he could file written objections within fourteen (14) days. On July 9, 2012, Ranking filed his Objection to the Report and Recommendation. (ECF No. 50.) On September 7, 2012, the Court vacated its June 27, 2012 Report and Recommendation, appointed counsel to Ranking, and ordered that this matter proceed by evidentiary hearing. (ECF No. 51.) On November 26, 2012, both parties requested additional time to file their proposed findings of fact and conclusions of law and joint stipulation regarding documentary evidence, which the Court granted. (ECF Nos. 54-55.) On December 6, 2012, the Court held an evidentiary hearing.

Based on Ranking's testimony during the hearing, on December 7, 2012, the Court ordered Ranking to file, no later than January 7, 2013, any records of phone calls Ranking made to his then-counsel Todd Stone after Ranking's sentencing on October 13, 2009, including any from Butner Federal Correctional Institution. (ECF No. 64.) In the alternative, the Court ordered Ranking to file a written statement indicating that no records were available. (ECF No. 64.) The Court also ordered the parties to confer regarding the need for an additional hearing. (ECF No. 64.) Lastly, the Court warned the parties that "If no hearing is required, briefing will be due on the Court's established eleven (11) day schedule, unless good cause is shown." (ECF No. 64.)

On December 13, 2012, Ranking timely filed his written statement that no phone records were available. (ECF No. 66.) On December 18, 2012, Ranking filed his revised proposed findings of fact and conclusions of law. (ECF No. 67.) On January 7, 2013, after the United

3

States missed another deadline, the Court ordered the United States to file its revised proposed findings of fact and conclusions of law no later than seven days from January 7, 2013 and ordered the United States to file a statement of cause "as to the Government's continued failure to meet this Court's deadlines in this and like cases." (ECF No. 69.) On January 11, 2013, the United States filed its Statement of Cause. (ECF No. 70.) On January 14, 2013, the United States filed its revised proposed findings of fact and conclusions of law. (ECF No. 71.)

## II. Standard of Review and Burden of Proof

A petitioner collaterally attacking his or her conviction bears the burden of proving that the conviction imposed violated the United States Constitution or laws, that the court lacked jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. The petitioner has the burden of proving the grounds for the collateral attack by a preponderance of the evidence. *Vanater v. Boles*, 377 F.2d 898, 900 (4th Cir. 1967); *White v. United States*, 352 F. Supp. 2d 684, 686 (E.D. Va. 2004). In a § 2255 proceeding, a court may hold an evidentiary hearing to "determine the issues and make findings of fact and conclusions of law." 28 U.S.C. § 2255(b). When making findings of fact, the court should determine the credibility of witnesses and reliability of other evidence. *See United States v. Roane*, 378 F.3d 382, 393-94, 409 n.15 (4th Cir. 2004).

## III. Findings of Fact

Supplementing the procedural events above, the Court makes the following findings of fact based on the record, as well as the testimony and exhibits submitted at the evidentiary hearing.

## A. Ranking's Guilty Plea

1. On July 1, 2009, the Honorable Henry E. Hudson conducted Ranking's plea colloquy, during which Ranking pled guilty to Count One of the Indictment. (ECF No. 12.)

2. Under oath, Ranking informed the district court that he had a sufficient opportunity to discuss the case with Stone and that he was satisfied with Stone's representation:

> The Court: Now, prior to coming to court today, have you had a thorough opportunity to discuss this case with your attorney, Mr. Stone?
>
> Mr. Ranking: Yes, sir.
>
> The Court: Are you entirely satisfied with his services?
>
> Mr. Ranking: Yes, sir.
>
> The Court: Has he done everything reasonable you have asked him to do in connection with this case?
>
> Mr. Ranking: Yes, sir.

(Guilty Plea Hr'g Tr. 5:13-22.)

3. Ranking confirmed he decided to plead guilty to the charge because he was in fact guilty of conspiracy to distribute and possess with intent to distribute one kilogram or more of a mixture and substance containing detectable amounts of heroin. (Guilty Plea Hr'g Tr. 7:20-24.)

4. Ranking signed the written plea agreement indicating that he "agree[d]" [he had] consulted with [his] attorney and fully understand all rights with respect to the pending indictment." (Gov't Ex. 6 Plea Agreement ("Plea Agreement") 16.) He signed the plea agreement, acknowledging he "read this plea agreement and carefully reviewed every part of it with [his] attorney. [He] [understood] this agreement and voluntarily agree[d] to it." (*Id.*) Ranking also confirmed this under oath during the plea colloquy. (Guilty Plea Hr'g Tr. 8:17-9:5.)

5

5. Ranking signed the statement of facts, indicating that he had "consulted with [his] attorney regarding this Statement of Facts. [He] knowingly and voluntarily agree[d] that each of the ... facts is true and correct and that had this matter gone to trial the United States could have proven each one beyond a reasonable doubt." (Gov't Ex. 7 Statement of Facts ("Statement of Facts") 3.) Ranking confirmed this under oath during questioning in the plea hearing. (Guilty Plea Hr'g Tr. 18:6-19.)

6. During the plea colloquy, the district court informed Ranking of the penalties associated with the charge: "The charge carries a penalty range of from 10 years to life, a fine of up to $4 million, five years of supervised release, which is kind of like being on parole, and a special assessment of $100." (Guilty Plea Hr'g Tr. 14:15-18.) Ranking confirmed that he knew he was facing at least ten years. (Guilty Plea Hr'g Tr. 14:11-14.) The plea agreement listed these penalties as well. (Plea Agreement ¶ 1.) The plea agreement made clear that no agreement as to sentencing existed, that the Court would determine his sentence guided by the Sentencing Guidelines and 18 U.S.C. § 3553(a), and that the district court could depart upward or downward from the Sentencing Guidelines if appropriate. (Plea Agreement ¶ 5.) Judge Hudson informed Ranking that any estimate regarding the ultimate sentence imposed could only be a prediction, and did not constitute a promise on which he could rely as the basis for entering a guilty plea. (Guilty Plea Hr'g Tr. 14-17.) Ranking stated under oath that no one had made any other promises, other than those contained in the plea agreement. (Guilty Plea Hr'g Tr. 9:8-12.)

7. The plea agreement contained a waiver of appeal provision, stating "the defendant knowingly waives the right to appeal the conviction and any sentence within the statutory maximum described above (or the manner in which that sentence was determined)." (Plea

6

Agreement ¶ 6.) The district court also informed Ranking about this appeal waiver during the plea colloquy. (Guilty Plea Hr'g Tr. 17:4-18.)

8. The plea agreement also contained a cooperation agreement, in which Ranking agreed to cooperate fully and truthfully with the United States and provide information regarding criminal activity. (Plea Agreement ¶¶ 12-15.) The United States reserved the right to seek any downward departure in sentence based on his cooperation. (Plea Agreement ¶ 16.)

9. Prior to taking a plea, the district court gave Ranking a final opportunity to ask any questions about the plea agreement. (Guilty Plea Hr'g Tr. 18:24-19:12.) Ranking then entered a plea of guilty to Count One of the Indictment. (Guilty Plea Hr'g Tr. 19:13-16.) Judge Hudson accepted Ranking's plea of guilty as voluntarily, knowingly, and intelligently entered with the understanding of the nature of the charge, the consequences of the plea, and the penalty provisions he faced. (Guilty Plea Hr'g Tr. 19:17-20:8.)

### B. Ranking's Sentencing Hearings

10. At Ranking's September 24, 2009 sentencing hearing, Ranking orally moved to continue the hearing to permit Ranking the opportunity to talk to law enforcement and qualify for the safety-valve reduction. (Sept. Sent. Hr'g Tr. 3:11-18.) Judge Hudson granted Ranking's motion to continue sentencing until October 13, 2009 to give Ranking an opportunity to qualify for the safety-valve. (Sept. Sent. Hr'g Tr. 4:20-24.)

11. Ranking's Presentence Investigation Report ("PSR") concluded that Ranking's offense level totaled 29, that he fell within criminal history category I, that his advisory guideline range fell between 87 to 108 months of imprisonment, and that his restricted guideline range was 120 months. (Oct. Sent. Hr'g Tr. 4:12-15.) (Gov't Ex. 8 PSR Worksheet ("PSR Worksheet") D.)

12. The PSR initially calculated that Ranking was safety-valve eligible. (PSR Worksheet A.) On October 8, 2009, the United States filed its Sentencing Position and Objection to the Safety Valve Eligibility Finding ("Gov't's Sent. Pos."). (ECF Nos. 19, 20.) The United States objected to the finding that Ranking was safety-valve eligible. (Gov't's Sent. Pos. 1.)

13. On October 13, 2009, Judge Hudson presided over Ranking's sentencing hearing. At the sentencing hearing, the district court informed the parties that the probation officer filed an addendum, indicating she did not believe the safety-valve applied. (Oct. Sent. Hr'g Tr. 4:16-18.)

14. Stone confirmed that he had received a copy of the PSR and the computation of the guidelines and had discussed both documents with Ranking. (Oct. Sent. Hr'g Tr. 3:15-21.) Ranking confirmed that he did not have any objections, corrections, or amendments to the PSR. (Oct. Sent. Hr'g Tr. 4:2-4.) The district court announced that the probation officer had calculated a total offense level of 29 with a criminal history category of I, yielding a sentencing range of 87 to 108 months and a statutory mandatory minimum of 120 months. (Oct. Sent. Hr'g Tr. 4:12-15.)

15. The district court inquired about the United States's objection and motion to exclude the two point reduction on the grounds that Ranking was safety-valve ineligible. (Oct. Sent. Hr'g Tr. 4:19-21.) The United States produced evidence and argued that Ranking was not safety-valve eligible because Ranking failed to provide all the truthful information and evidence he had concerning his offense. (Oct. Sent. Tr. Hr'g 5-12; 19-22.) After hearing counter-argument from Ranking, the district court concluded that Ranking did not qualify for the safety-valve reduction. (Oct. Sent. Hr'g Tr. 28:3-4.)

16. The district court concluded that Ranking's Total Offense Level would be 31, with a Criminal History Category I, and a restricted range of 120 months. (Oct. Sent. Tr. Hr'g 28:5-7.) The district court did not announce the guideline range. (Oct. Sent. Tr. Hr'g 28:5-7.)

17. During argument as to sentencing, the United States asked the district court to sentence Ranking to the mandatory minimum 120 months. (Oct. Sent. Hr'g Tr. 30:8-9.) Counsel for Ranking asked that Ranking be sentenced to the 120 month mandatory minimum as well. (Oct. Sent. Hr'g Tr. 30:20-21.)

18. Prior to imposing a sentence, Judge Hudson gave Ranking an opportunity to address the Court:

> The Court: Mr. Ranking, anything further would like to say this morning, sir, before I decide what sentence is appropriate in your case?
>
> Mr. Ranking: Yes, sir.
>
> The Court: Go right ahead.
>
> Mr. Ranking: First off, I'd like to apologize to the Court, and I'd like to apologize to the people that I sold. And I'm very sorry to what I've done. All I'm asking, sir, is just lenient (sic). Please let me out so my mother can see me. I know I've done something wrong. I'm just asking for a second chance, sir.

(Oct. Sent. Hr'g Tr. 30:24-31:14.)

19. Considering the sentencing guidelines advisory and after reviewing the factors under 18 U.S.C. § 3553(a), the district court sentenced Ranking to 120 months of imprisonment, a sentence at the statutory minimum. (Oct. Sent. Hr'g Tr. 32:24-33:6.)

20. At the conclusion of the sentencing, Judge Hudson stated to Ranking:

> As a part of your plea agreement, you've waived your right of appeal as to most sentencing issues. But if you feel I have done anything unlawful, Mr. Ranking, or if you feel I have made an

9

> error in determining the safety valve, you can appeal my decisions to the U.S. Court of Appeals for the Fourth Circuit. That appeal must be noted though within 10 days of today.
>
> Before you leave court today, take a moment and confer with Mr. Stone and discuss whether or not you wish to note an appeal because if you wish to do so, he's got to put that in motion within 10 days. However, once again, in your plea agreement you've waived your right of appeal, so the two of you need to discuss how that provision affects your appellate rights.

(Oct. Sent. Hr'g Tr. 35:2-15.)

### C. Ranking's Account of His Post-Sentencing Communications with Stone Regarding His Direct Appeal

21. At the evidentiary hearing, Ranking testified that while inside the courtroom on the day of his sentencing, he told Stone to appeal the safety-valve determination. (Evid. Hr'g Tr. 9:19-10:6.) Ranking further testified that while in court lock-up after sentencing: "I told [Stone] I want to appeal the safety valve because I think I was qualified for it." (Evid. Hr'g Tr. 10:18-19.) Ranking testified that Stone answered in response: "He told me he would do it in ten days." (Evid. Hr'g Tr. 11:6.)

22. Ranking also testified that Stone told Ranking that Stone would "come and see me at Pamunkey [Regional Jail]." (Evid. Hr'g Tr. 11:13.) Ranking testified that "after the trial, after I got sentenced, I never [saw] Mr. Stone" and repeated that Stone did not come to see him within ten days after sentencing. (Evid. Hr'g Tr. 12:3-4, 12:13-16.)

23. Ranking "attempt[ed] to make contact with Mr. Stone or his office during the ten days following October 13th, 2009." (Evid. Hr'g Tr. 12:17-19.) Ranking "called [Stone] several times and . . . didn't get nobody. I kept getting the -- his secretary or the lady that work for him." (Evid. Hr'g Tr. 12:21-23.) Ranking used a prepaid card to make the calls and spoke to a female. (Evid. Hr'g Tr. 13:4-5; 13:9-11.)

24.     Ranking testified he received no correspondence from Stone or his office during the ten to fourteen day period following the October 13, 2009 sentencing. (Evid. Hr'g Tr. 14:12-15.)

25.     After travelling to Butner Federal Correctional Institution, Ranking testified he again tried calling Stone's office. (Evid. Hr'g Tr. 15:7-8.) Ranking testified he spoke directly to Stone from Butner about four days after receiving Stone's personal cell number. (Evid. Hr'g Tr. 16:17-25.)

26.     Ranking testified that he twice called Stone asking for documents and that Stone sent Ranking the requested documents. (Evid. Hr'g Tr. 17:6-20; 18:4-12; 20:4-11; 20:15-25.)

27.     Ranking testified he never "ask[ed] Mr. Stone why he did not pursue [Ranking's] directive of noting an appeal" because Stone "told [Ranking] if it passed ten days, [Ranking] couldn't get the appeal." (Evid. Hr'g Tr. 21:1-6.)

### D.     Stone's Account of His Post-Sentencing Communications with Ranking

28.     At the evidentiary hearing, Stone testified that Ranking "was satisfied" with the sentence he received. (Evid. Hr'g Tr. ("Evid. Hr'g Tr.") 82:3-4, Dec. 6, 2012, ECF No. 65.)

29.     Stone testified that he "would remember" Ranking asking him to appeal the sentence and that he "[didn't] recall [Ranking] ever asking me that." (Evid. Hr'g Tr. 82:6-10.)

30.     Stone also stated that he would have "absolutely" gone to see Ranking at Pamunkey Regional Jail if he had "told [Ranking] that [he was] going to come to see [Ranking]" "in two or three days." (Evid. Hr'g Tr. 82:21-25.)

31.     Stone testified he did not correspond with Ranking, and Ranking did not correspond with him, regarding an appeal. (Evid. Hr'g Tr. 75:19-22.)

32. In response to a telephone call from Ranking on December 2, 2009, Stone sent Ranking documents on December 3, 2009 that Ranking requested, including his Docket Sheet, Indictment, Detention Order, Plea Agreement, and Judgment. (Evid. Hr'g Tr. 76:20-25; 77:15-17.) (Gov't Ex. 2 Dec. 3, 2009 Letter to Ranking ("Gov't Ex. 2"); Gov't Ex. 15 Email to Stone regarding Ranking's Dec. 2, 2009 phone call ("Gov't Ex. 15").)

33. Stone testified that Ranking called his office for the first time on December 2, 2009, approximately six weeks after sentencing. (Evid. Hr'g Tr. 80:1-11.)

34. Stone testified that "if [Ranking] had asked me to appeal, I'm quite sure I would remember that and I have no recollection of him asking to appeal." (Evid. Hr'g Tr. 80:17-19.)

35. Stone sent another letter to Ranking on January 27, 2010 in response to a January 11, 2010 letter from Ranking requesting documents. (Gov't Ex. 3 Jan. 11, 2010 Letter to Stone ("Gov't Ex. 3"); Gov't Ex. 4 Jan. 27, 2010 Letter to Ranking ("Gov't Ex. 4").) Stone forwarded a copy of Ranking's Statement of Facts, Sentencing Guideline Order, Government's Sentencing Position, Government's Objection to the Presentence Report, and Statement of Reasons. (Gov't. Ex. 4.) Stone noted that the Government's Sentencing Position and Objection to the Presentence Report were filed together as one document. (Gov't Ex. 4.) Again, Stone invited Ranking to contact him with any questions Ranking had. (Gov't Ex. 4.)

36. Ranking's January 11, 2010 letter does not reference an appeal, does not indicate that Ranking is upset that no appeal has been filed, and does not say that Ranking is disappointed Stone never came to see him. (Gov't Ex. 3.)

37. Stone testified he would have visited Ranking at Pamunkey Regional Jail if Ranking had asked, "especially" "if [Stone] thought it was purposes of talking about an appeal" but Stone didn't "recall any discussion like that at all." (Evid. Hr'g Tr. 82:21-25, 83:4-5.)

38. As indicated above, subsequent to his sentencing, Ranking corresponded with Stone regarding certain documents in his file. Stone submitted documents to Ranking on two occasions. In these letters, Ranking never inquired regarding the status of any appeal or expressed any disappointment regarding Stone's failure to file an appeal as directed. (Gov't Exs. 2-4.)

### E. Stone's Version of Events Is More Credible than Ranking's

39. Having considered the above and having weighed the credibility of the witnesses, the Court finds that Ranking never expressly requested Stone to file an appeal of his case and never expressed an interest in appealing his case. Ranking's testimony otherwise lacks credibility.

40. Ranking's testimony lacks credibility and is not supported by the contemporaneous record. The plea documents and plea hearing made amply clear that Ranking had waived his right to any appeal. During sentencing, Ranking apologized for his conduct without objecting to the safety-valve application. Finally, Ranking's claim that he orally requested an appeal immediately after sentencing lacks the ring of truth because Ranking never expressed frustration in his later, written correspondence about the status of his appeal.

41. Ranking repeatedly confirmed under oath during his July 1, 2009 plea hearing that he pled guilty because he was guilty and that he signed and understood his Plea Agreement. His responses under oath during the plea hearing and acknowledgement of the terms of his plea agreement thoroughly demonstrate he intended to plead guilty and knew he waived his right to appeal.

42. During the same plea hearing, Ranking also affirmed under oath that no one assured him a particular sentence or sentence range in exchange for his plea and that he

understood he could not withdraw his plea if the probation office or Court calculated a higher guideline sentence range than his attorney had. Ranking understood that any prediction regarding his sentence, including any determination that he was safety-valve eligible, did not bind Judge Hudson.

43.     Ranking waited until approximately December 2009 to contact Stone, almost sixty days after his sentencing and well beyond the ten-day appeal period. Ranking's silence during the critical ten-day period, and for almost fifty days after that, demonstrates that he understood he waived his right to appeal when he plead guilty.

44.     The documentary evidence does not support Ranking's testimony. Ranking contacted Stone by telephone on December 2, 2009 and wrote to Stone on January 11, 2010, requesting certain documents from his case. (Gov't Ex. 3, 15.) The January 11, 2010 letter does not contain any inquiries as to the status of any appeal. Stone promptly responded to Ranking's request for documents on December 3, 2009 and January 27, 2010. (Gov't Ex. 2, 4.) In his correspondence, Ranking never inquired regarding the status of any appeal and never expressed frustration, disappointment, or concern when Stone failed to visit Ranking as allegedly promised or when Stone failed to file an appeal as directed. (Gov't Ex. 3.)

45.     The Court finds Stone's version of events to be more credible and supported by the contemporaneous record.

## IV. Analysis

### A. Standard of Review for a Claim of Ineffective Assistance of Counsel for Failure to File an Appeal

The standard set forth by the Supreme Court of the United States in *Strickland v. Washington* governs claims of ineffective assistance of counsel. 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that the Sixth Amendment guaranteed a criminal defendant's

right to reasonably effective assistance of counsel. *Id.* at 687. To prove a constitutional claim for ineffective assistance of counsel, the petitioner must first show that his or her counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. Second, the petitioner must demonstrate actual prejudice from the deficiency. *Id.* at 694.

In conjunction with *Strickland*, the decision of the Supreme Court in *Roe v. Flores-Ortega* governs ineffective assistance of counsel claims for failure to file a notice of appeal. *See* 528 U.S. 470 (2000). In *Flores-Ortega*, the Supreme Court held that:

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Id.* at 480. This determination must take into account "all the information counsel knew or should have known." *Id.*

If a consultation about appeal has occurred, counsel performs deficiently only by failing to follow the defendant's express instructions with respect to an appeal. *Id.* at 478. "[A] criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." *United States v. Peak*, 992 F.2d 39, 42 (4th Cir. 1993). Moreover, "an attorney is required to file a notice of appeal when unequivocally instructed to do so by his client, even if doing so would be contrary to the plea agreement [because the defendant has waived his right to appeal] and harmful to the client's interests."[1] *United States v. Poindexter*, 492 F.3d 263, 273 (4th Cir. 2007).

---

[1] The Court notes that a split of authority exists on the issue of whether a lawyer is *per se* ineffective when the lawyer fails to file a notice of appeal despite his client's wishes, even when the defendant has waived his right to appeal and has no meritorious issues to raise. A minority

If the attorney received no express instruction to file a notice of appeal, and no consultation has occurred, a court must determine "whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Flores-Ortega*, 528 U.S. at 478. The prejudice prong of *Strickland* requires "that counsel's deficient performance must actually cause the forfeiture of the defendant's appeal. If the defendant cannot demonstrate that, but for counsel's deficient performance, he would have appealed, counsel's deficient performance has not deprived him of anything, and he is not entitled to relief." *Id.* at 484. "Thus, to prevail on an ineffective assistance claim for failing to note an appeal, a defendant need not 'demonstrate that his hypothetical appeal might have had merit,' but rather only that 'but for counsel's deficient conduct, he would have appealed.'" *Jiminez v. Vaughan*, No. 3:07cv639, 2008 WL 2329767, at *3 (E.D. Va. June 5, 2008) (quoting *Flores-Ortega*, 528 U.S. at 486).

B.  **Ranking's Claim Fails**

1.  **Ranking Did Not Timely Instruct Stone to File an Appeal**

The record demonstrates that Ranking did not instruct Stone to file an appeal within the ten-day period following his sentencing. Ranking's testimony that he did ask counsel to file an appeal prior to the expiration of these ten days lacks credibility for the reasons discussed above. *See supra* Part III.E. Conversely, Stone testified credibly that Ranking never instructed him to file an appeal in a timely manner. The contemporaneous record supports Stone's testimony.

Ranking's responses under oath to Judge Hudson's questions during the plea hearing demonstrate that Ranking intended to plead guilty and knew, as a part of that plea, that he

---

of circuits hold that counsel is not *per se* ineffective for honoring a client's written waiver of appeal instead of the client's later oral instruction to appeal. *See, e.g., Nunez v. United States*, 546 F.3d 450, 456 (7th Cir. 2008); *United States v. Mabry*, 536 F.3d 231, 240-42 (3d Cir. 2008); *see also United States v. Arevalo*, No. 5:07-153-JMH-JGW, 2010 WL 5391459, at *2 (E.D. Ky. Dec. 22, 2010). Recognizing that this non-binding precedent exists, this Court nonetheless adheres to the principles announced by the Fourth Circuit. *See United States v. Poindexter*, 492 F.3d 263, 265 (4th Cir. 2007).

waived his right to appeal. Ranking testified under oath that he knew he gave up his right to appeal as a part of his plea. At sentencing, Ranking apologized to the Court and admitted that he knew he had done something wrong. His request for leniency further confirms that Ranking knew he waived his right to appeal and intended to do so.

Ranking never expressed frustration when Stone allegedly failed to visit him at Pamunkey Regional Jail. The documentary evidence clearly establishes that Ranking first called Stone's office on December 2, 2009, after Ranking's October 13, 2009 sentencing and well beyond the expiration of the ten-day appeal period. During Ranking's sentencing, Judge Hudson clearly and specifically told Ranking that a failure to file the appeal would result in the loss of appellate rights.

### 2. Stone Had No Duty to Consult with Ranking Regarding an Appeal

Absent an express instruction to file a notice of appeal, the Court must consider whether Stone had a duty to consult with Ranking about an appeal. *Flores-Ortega*, 528 U.S. at 480. The Constitution requires counsel to consult with the defendant about an appeal only "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* "Consult," as defined by the Supreme Court, means to advise "the defendant about the advantages and disadvantages of taking an appeal, and [make] a reasonable effort to discover the defendant's wishes." *Id.* at 478. Whether the defendant proceeded to trial or pled guilty becomes a highly relevant factor to this inquiry. *Id.* If the defendant pled guilty, the court should consider whether the defendant received the sentence bargained for in a plea agreement and whether the defendant waived some or all rights to appeal in the plea agreement. *Id.*

The Court finds that Stone had no duty to consult with Ranking about an appeal. First, the record demonstrates that a rational defendant in Ranking's position would not have pursued an appeal. Ranking pled guilty pursuant to a written plea agreement and waived his right to appeal any sentence within the statutory maximum or the manner in which that sentence was determined. Ranking ultimately received a sentence at the statutory minimum.

After ruling on the Government's objections to the Presentence Report, Judge Hudson adopted the guidelines as computed by the probation officer. Judge Hudson selected Ranking's sentence after making an individualized assessment of his case, and any challenge to the reasonableness of that sentence would face a highly deferential standard on appeal. *United States v. Evans*, 526 F.3d 155, 161 (4th Cir. 2008). Ranking's sentence was also within the advisory guideline range and thus is presumptively reasonable. *United States v. Mendoza-Mendoza*, 597 F.3d 212, 217 (4th Cir. 2010). Based on these considerations, Ranking cannot demonstrate that a rational defendant would have wanted to appeal his sentence.

Ranking likewise has failed to demonstrate that he showed any interest in filing an appeal during the ten-day appeal period. Ranking's testimony that he told Stone to file an appeal within the ten-day appeal period lacks credibility. Stone, however, testified credibly that Ranking never requested that he file an appeal. Accordingly, the Court finds that Stone had no duty to consult with Ranking regarding an appeal.

## V. Conclusion

For the foregoing reasons, it is hereby RECOMMENDED that the Court DISMISS Ranking's ineffective assistance of counsel claim and DENY the § 2255 motion.

Ranking is ADVISED that he may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Each objection should be

labeled with the corresponding heading from the Report and Recommendation, should be numbered, and should identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. Failure to file specific objections in a timely manner to the Report and Recommendation may result in the entry of an Order denying the motion. *See* Fed. R. Civ. P. 72(b). It may also preclude further review or appeal from such judgment. *See Wright v. Collins*, 766 F.2d 841, 845 (4th Cir. 1985) (noting the general rule that "a party who fails to object to a magistrate's report is barred from appealing the judgment of a district court adopting the magistrate's findings").

Let the Clerk send a copy of the Report and Recommendation to all counsel of record and to the Honorable Henry E. Hudson.

And it is so ORDERED.

/s/
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 5-24-13